# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SAINT LAWRENCE COMMUNICATIONS LLC, | § § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 2:19-CV-00027-JRG |
| AMAZON.COM, INC., AMAZON.COM LLC, | § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM AND OPINION ORDER

Before the Court is Defendants Amazon.com, Inc. and Amazon.com LLC's (collectively, "Amazon") Motion to Transfer Pursuant to Contractual Forum Selection Clause (the "Motion"). (Dkt. No. 30.) Having considered the same and the briefing, the Court is of the opinion that the Motion should be and hereby is **DENIED** for the reasons set forth herein.

I. INTRODUCTION

    A. **SLC and Amazon's Prior Licensing Agreement**

Amazon and SLC entered into a Patent License and Litigation Settlement Agreement (the "Agreement") on April 22, 2015.[1] (*See* Dkt. No. 37-2.) In exchange for royalty payments, SLC (and its related foreign entity) gave Amazon the right to make, use, or sell 75,000 licensed products in twenty European countries, "solely for the purpose of encoding and decoding data in accordance with the AMR-WB Standard" as related to several of SLC's foreign patents. (*See id.* §§ 1.19, 2.1, and at Appx. B.) The Agreement also includes a choice of law and forum selection provision:

---

[1] The Agreement defines "Party" to include Defendant Amazon.com, Inc.'s subsidiaries, which includes Defendant Amazon.com LLC. (Dkt. No. 37-2 §§ 1.1, 1.14; *see also* Dkt. No. 30 at 3 n.4.)

> This Agreement shall be governed by, interpreted and construed in accordance with the laws of New York, without reference to conflicts of laws principles. *Any legal action or other legal proceeding relating to this Agreement* or the enforcement of any provision of this Agreement *must be brought or otherwise commenced* in a federal or state court *in New York*.
>
> Each Party expressly and irrevocably consents and submits to the jurisdiction of such state and federal courts in connection with any such legal proceeding.

(*See id.* at § 10.1 (emphasis added).)

### B. The Instant Lawsuit

SLC sued Amazon on January 28, 2019, alleging infringement of U.S. Patent Nos. 6,795,805 ("'805 Patent"); 6,807,524 ("the '524 Patent"); 7,151,802 ("'802 Patent"); 7,260,521 ("'521 Patent"); and 7,191,123 ("'123 Patent") (collectively, the "Asserted Patents"). (*See* Dkt. No. 1 (Complaint) at 7, 11, 16, 21, 25.) In its original Complaint, SLC appeared to allege that Amazon had pre-suit notice of the Asserted Patents by way of the Agreement. (*See id.* ¶ 24; *see also* Dkt. No. 30-2 (Letter by Marc Booth on behalf of SLC to Amazon) (alleging infringement of the Asserted Patents and identifying the limited scope of the Agreement).) SLC subsequently amended the Complaint, which now indicates non-reliance on the Agreement. (Dkt. No. 36 n.9.) There is no dispute that the Asserted Patents are not covered by the Agreement. (*Cf.* Dkt. No. 37-2 at Appx. B.)

SLC is a Texas limited liability company with its principal place of business at 6136 Frisco Square Blvd., Suite 400, Frisco, Texas 75034. (Dkt. No. 1 ¶ 1.) Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington, 98109. (Dkt. No. 27 ¶ 2.) Defendant Amazon.com LLC was a Delaware corporation

that ceased operations by January 1, 2018, when it merged into Amazon.com Services, Inc.[2] (*Id.* ¶ 3.)

Amazon contends that the Agreement's forum selection clause controls this case and asks, pursuant to the Agreement and 28 U.S.C. § 1404(a), the Court to "transfer this case to the Southern District of New York[,] where SLC is currently asserting the same patents-in-suit in pending litigation."[3] (*See* Dkt. No. 30 at 1.)

## II. APPLICABLE LAW

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The threshold inquiry when analyzing eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. As such, to prove that transfer is proper, the movant must establish that, as of the time of filing, each party "would have been amenable to process in . . . the transferee court" and that "venue as to all [parties] would have been proper [there]." *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds*

---

[2] Neither party has made representations as to the principal place of business of Amazon.com Services, Inc. Accordingly, the Court relies on the principal place of business of Defendant Amazon.com, Inc. for purposes of this Motion.

[3] The Asserted Patents are also at issue in litigation currently pending in the Southern District of New York. *See Sony Mobile Commc'ns Inc. v. EVS Codec Techs., LLC*, Case No. 1-18-cv-09518-JSR, Dkt. No. 95 ¶¶ 68, 140.B–D (S.D.N.Y Feb. 25, 2019) (SLC's declaratory judgment answer and counterclaims for infringement of the Asserted Patents); *LG Elecs. Inc. v. Saint Lawrence Commc'ns LLC*, Case No. 1:18-cv-11082-DLC, Dkt. No. 72 ¶ 18 (S.D.N.Y. Mar. 1, 2019) (SLC's declaratory judgment answer action identifying the Asserted Patents).

*by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987); *accord Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960).

Once this initial threshold has been met, courts determine whether the case should be transferred by analyzing various public and private factors. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *accord In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman*, 363 U.S. at 343. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) [hereinafter *Volkswagen II*].

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (holding that a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'") (internal citation omitted). Absent such a showing, plaintiff's choice of venue is to be respected. *Volkswagen II*, 545 F.3d at 315. When deciding a motion to transfer under § 1404(a), the court may consider

undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

The above two-step process differs, however, when the movant has raised the applicability of a forum selection clause. As the Supreme Court has recognized, § 1404(a) provides "a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). In those cases, the court must first consider whether the party asserting the clause and the defense or claim triggering that clause crosses the threshold required to trigger the application of the forum selection clause. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) [hereinafter *GPG*] (citing *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000)). If the court concludes that it does, then the usual § 1404 analysis is altered in two relevant ways: (1) the plaintiff's choice of forum merits no weight, and (2) the district court should consider arguments about public interest factors only. *Atl. Marine*, 651 U.S. at 581–82.

To determine whether a forum selection clause is applicable, the Federal Circuit has instructed that the nexus between the current claims and the alleged defense flowing from the prior license or settlement agreement must be "non-frivolous." *GPG*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit is insufficient to trigger the forum selection clause. *Id.* While, the Federal Circuit has not strictly demarcated the boundaries and scope of the "non-frivolous" standard, this Court has previously used a "less than one-half and nearer to one-quarter" standard. The "attachment point" along a continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits

5

where an asserted defense is "almost assuredly . . . found before we reach the mid-point of the spectrum" and is probably "found nearer the one-quarter marker." *Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-1272-JRG, 2016 WL 7042221, at *2–4 (E.D. Tex. June 9, 2016).

### III. DISCUSSION

#### A. Applicability of the Forum Selection Clause

The Court first determines whether Amazon has raised a "non-frivolous" defense that entitles it to the benefit of the asserted forum selection clause. This analysis is procedural in nature and is limited to the discreet issue of whether Amazon's defenses crosses the "one-quarter" mark of the viability spectrum where they should be considered non-frivolous. While such an inquiry necessarily requires the Court to consider the merits of Amazon's defenses, their substantive resolution is neither appropriate nor necessary at this juncture.

Amazon argues that the Agreement's forum selection clause broadly encompasses any legal action "*relating to th[e] Agreement* or the enforcement of any provisions of th[e] Agreement" and thus governs any legal action that is "connected by reason of an established or discoverable relation" to the Agreement. (*See* Dkt. No. 30 at 9 (quoting Dkt. No. 37-2 at § 10.1; *NuCurrent, Inc. v. Samsung Elecs. Co.*, No. 6:18-cv-51-JRG-KNM, 2018 WL 7821099, at *6 (E.D. Tex. Dec. 26, 2018)) (emphasis in original).) Amazon contends that this case is a lawsuit "relating to" the Agreement because (1) "SLC cites and relies upon the Agreement to support [it]'s purported claims for willfulness, indirect infringement, and enhanced damages"; (2) "SLC's Infringement Contentions rely on the Agreement as allegedly providing Amazon with 'notice of its infringement'"; and (3) "SLC asserts that the Agreement is directly relevant to a reasonable royalty for determining compensatory damages in this case." (Dkt. No. 30 at 10–11.) As such, "SLC cannot avoid the forum selection clause merely by unilaterally assuring the Court that . . . it no

longer wants to rely on the Agreement." (Dkt. No. 40 at 2.) Amazon explains that *it* still intends to "affirmatively rely on the Agreement to defend against SLC's willfulness claims, as evidence of Amazon's history of good faith conduct." (*Id.* at 4.) Additionally, Amazon argues "a proper royalty analysis under the well-known *Georgia-Pacific* factors . . . must account for" (1) substantive differences between the Asserted Patents and the patents covered by the Agreement and (2) the AMR-WB speed coding standard common between the same. (*Id.* at 3–4.)

SLC argues "Amazon logically cannot raise any licensing defense in this case because none of the [A]sserted [P]atents were subject to the Agreement." (Dkt. No. 37 at 2.) SLC also argues that Amazon "cannot argue that it subjectively believed that a European patent license provided any sort of defense to infringement of the asserted U.S. patents or otherwise relates to its subjective knowledge of these patents." (Dkt. No. 43 at 4.) Moreover, SLC "has amended its complaint to stipulate that it will not rely upon the Agreement to establish either knowledge or willfulness," thereby "moot[ing] any argument that it intends to rely upon the Agreement." (Dkt. No. 37 at 3–5; *see also* Dkt. No. 43 at 5.) Additionally, SLC argues that it "will not rely upon the Agreement as the basis for its reasonable royalty analysis" because "the Agreement is not a comparable license." (Dkt. No. 37 at 5.)

The Court finds that the Agreement's forum selection clause does not apply to the parties' dispute. SLC's infringement claims and Amazon's defenses in the instant case are not "related to" the Agreement because their resolution *does not* "require[] the application of various provisions of the [Agreement]." *Cf. NuCurrent*, 2018 WL 7821099, at *8. Although the Agreement's forum selection clause contains broad language, a dispute must still fall *within* the scope of that agreement in order to be triggered. *See Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 432 (E.D.N.Y.

7

2014) (applying a broad interpretation to the phrase "not limited to disputes in connection with, arising out of, or relating in any way to, [the agreement]").

It is undisputed that the Asserted Patents are not covered by the Agreement, and a plain reading of the Agreement does not lead the Court to conclude otherwise.[4] As such, even if the existence of and the parties' knowledge of the Agreement were relevant to determining willful infringement, the Agreement—on its face—does not put Amazon on notice that its actions may infringe the Asserted Patents. *Cf. GPG*, 651 F.3d at 1359 (explaining that "there [wa]s no question in th[e] case that the dispute 'relates to or arises out of' [a s]ettlement [a]greement" where the outcome of a "dispute regarding the scope of a patent license. . . . will determine whether the patentee can sustain its suit for infringement"). Any inference of a subjective intent by Amazon to infringe the Asserted Patents would require one to look beyond the Agreement itself. As such, the provisions of the Agreement and the parties' knowledge thereof are at most tangential to the instant lawsuit. *See Rovi Guides, Inc. v. Comcast Corp.*, No. 216-cv-00322-JRG-RSP, 2016 WL 6217201, at *3 (E.D. Tex. Oct. 25, 2016) ("Courts must be mindful, however, of extending a broadly-worded forum-selection clause too far, such that every subsequent dispute between contracting parties triggers a forum-selection clause when the agreement is raised as a defense.").

The Court likewise finds that use of the Agreement as evidence in a reasonable royalty analysis does not trigger the Agreement's forum selection clause. Whether the Agreement is a comparable license is not a dispute "related to" the Agreement.[5] Comparability focuses on

---

[4] The only relationship between the Asserted Patents and the Agreement's patents argued by Amazon is that both sets of patents are represented by SLC as being essential to the AMR-WB speed coding standard. (Dkt. No. 30 at 4–5; 40 at 3–4.) However, simply being essential to the same AMR-WB speed coding standard does not indicate that the Asserted Patents are directly related to the Agreement's patents.

[5] Many licensing agreements, of varying degrees of comparability, are often used as evidence in determining a reasonably royalty. Each agreement may include a forum selection clause, and in

whether the *patents* in a license are comparable to the *patents* at issue. *See e.g.*, *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (explaining that one factor in establishing a reasonable royalty includes "[t]he rates paid by the licensee for the use of other **patents comparable** to the patent in suit") (emphasis added). Should the patents of the Agreement be comparable to the Asserted Patents, then the Agreement's terms may inform the reasonable royalty for the Asserted Patents. However, the Court is persuaded, based on the record before it, that the Agreement is not the thrust of SLC's claims nor Amazon's defenses.

While the Agreement may be used as *evidence* at trial as to issues such as willful infringement or the amount of damages, the Agreement itself is not Amazon's *defense* to SLC's claims. If the use of an agreement at trial as one of the many bricks in the evidentiary wall to be built before the jury should somehow and without more invoke a forum selection clause contained therein, then every defendant in this posture would be incentivized to claim the agreement was important evidence relating to some issue of triable fact. Here, the issue of comparability between the Agreement and the Asserted Patents of willfulness is a matter for the jury to determine as part of the trial. They may well conclude that there is no material comparability. To let the possibility that the jury might find the Agreement to be comparable trigger the unrelated forum selection clause therein would be improper and far beyond what the parties to the Agreement could have reasonable intended when the Agreement was negotiated and executed.

For these reasons, the Court is persuaded that Amazon has not presented a non-frivolous argument; that is to say one that satisfies the "less than one-half and nearer to one-quarter" standard

---

some instances, the same parties may have multiple agreements between them covering different patents or families. Under Amazon's argument, the use of any such licensing agreements as *evidence* in the reasonably royalty context could trigger the forum selection clauses therein, potentially requiring transfer to disparate or competing forums. Although "related to" connotes a broad form of association, Amazon goes too far.

9

required to trigger the forum selection clause set forth in the Agreement. *See Zix*, 2016 WL 7042221, at *2–4. Accordingly, the Court finds that the claims at issue do not implicate *Atl. Marine* and proceeds to consider the issue of § 1404(a) transfer under *Volkswagen II*.

### B. Transfer Under 28 U.S.C. § 1404(a)

SLC and Amazon are silent on whether this action could have been properly filed in the Southern District of New York.[6] However, Amazon admits that its "subsidiaries operate in many locations throughout the country, including in the Southern District of New York."[7] (Dkt. No. 30 at 2.) *See also* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where . . . the defendant has . . . a regular and established place of business."). Thus, the Court *sua sponte* finds that the threshold requirement for transfer under § 1404(a) has been satisfied.

#### 1. Private Transfer Factors

##### a) Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered. *See Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Amazon must show that transfer to the Southern District of New York will result in more convenient access to sources

---

[6] Amazon's sole argument for the propriety of venue in the Southern District of New York is based on the Agreement's forum selection clause and the parties' apparent consent related thereto. (Dkt. No. 30 at 11.) However, the Court has already determined that the Agreement's forum selection clause has yet to be triggered.
[7] Likewise, Amazon's answer in relation to venue in this District admitted that "subsidiaries of Amazon.com, Inc. operate places of business in th[e Eastern District of Texas]." (*See* Dkt. No. 27 ¶ 8.)

of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

The parties are silent on this factor. However, SLC has represented that its principal place of business is in Frisco, TX, and Amazon has admitted that its principal place of business is in Seattle, Washington.[8] (*See* Dkt. No. 1 ¶ 1; Dkt. No. 27 ¶ 2.) Both locations are closer to this District than the Southern District of New York. Accordingly, the Court finds that this factor weighs against transfer.

### b) Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *In re Volkswagen II*, 545 F.3d at 216. Since the Parties have not identified any potential witnesses for whom compulsory process may be necessary, the Court concludes that this factor favors neither party and is neutral.

### c) Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y.2006). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

---

[8] The parties have not identified any other specific locations where relevant, documentary evidence may be located. To the extent Amazon's "subsidiaries operate in many locations throughout the country, including in the Southern District of New York," such ambiguous availability is netted against the admitted "subsidiaries of Amazon.com, Inc. [that] operate places of business in th[e Eastern District of Texas]." (*Compare* Dkt. No. 30 at 2, *with* Dkt. No. 27 ¶ 8.)

The Court finds that this factor favors neither side, as the parties have not identified any willing witness for which the Southern District of New York is more or less convenient than the Eastern District of Texas. This factor is neutral.

### d) All Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011). Since the parties have not presented arguments on this factor, the Court finds that this factor is neutral.

### 2. Public Transfer Factors

### a) Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. Amazon contends that the "relative court congestion is either neutral or not a significant factor." (Dkt. No. 30 at 12.) SLC presents no arguments in its favor. Accordingly, the Court finds that this factor is neutral.

### b) Local Interest in Having Localized Interests Decided at Home

Amazon argues that "the local interests factor is either neutral or insignificant." (Dkt. No. 30 at 13.) SLC is silent on this issue. Thus, this factor is neutral.

### c) Avoidance of Unnecessary Conflicts of Law

Amazon states that "[t]his factor is neutral as no such issues are expected to arise." (Dkt. No. 30 at 15.) SLC presents no arguments in its favor. The Court finds that this factor is neutral.

### d) *Familiarity of the Forum with Governing Law*

Amazon argues that "New York law will govern issues of interpretation and enforcement of the Agreement that will arise in this case." (Dkt. No. 30 at 14.) SLC presents no argument on this factor.

To the extent that the Agreement is used as evidence in this case, the Court is capable of reading and applying the factual provisions therein. As such, the Court finds that this factor weighs slightly, but only slightly, against transfer.

Having considered the relevant public and private factors, the Court concludes that Amazon has not met its burden to demonstrate the Southern District of New York is "clearly more convenient." *See Volkswagen II*, 545 F.3d.[9]

## IV. CONCLUSION

For the reasons stated above, Amazon's Motion to Transfer Pursuant to Contractual Forum Selection Clause (Dkt. No. 30) is hereby **DENIED**.

**So ORDERED and SIGNED this 5th day of July, 2019.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[9] The Court notes that the facts of this case are distinguishable from those that were present in *In re HP, Inc.*, 2018-149, Dkt. No. 16 (Fed. Cir. Sept. 25, 2018). In that case, HP, Inc. petitioned the Federal Circuit for a writ of mandamus seeking an order directing the Eastern District of Texas to vacate its order denying transfer and to transfer the case to the Northern District of California. The Federal Circuit granted the petition, finding that the district court abused its discretion because it "refus[ed] to transfer despite weighing several factors in favor of transfer and no factor in favor of keeping the case." *Id.* at 4. Unlike *HP*, however, this Court has found that six factors are neutral, one weighs against transfer, and one weighs slightly against transfer. This falls short of showing that the Southern District of New York is a clearly more convenient forum.